UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LYTOSHIA S THOMPSON                                     CIVIL ACTION

VERSUS

EAST FELICIANA SCHOOL SYSTEM,                    NO. 19-00840-BAJ-RLB
ET AL.

## RULING AND ORDER

Before the Court are Defendants East Feliciana Parish School Board and Carlos Sam's Motions for Summary Judgment (Doc. 31; Doc. 35). The Motions are opposed. (Doc. 43; Doc. 44). Defendants filed Replies. (Doc. 46; 47). For the reasons stated herein, Defendant East Feliciana Parish School Board's Motion for Summary Judgment is **GRANTED.** Defendant Carlos Sam's Motion for Summary Judgment is **DENIED** as moot.

I.    FACTS

Plaintiff sues the East Feliciana Parish School Board (hereinafter "Board") and Carlos J. Sam (hereinafter "Sam"), Superintendent of Schools, based on alleged sexual harassment, retaliatory discharge, denial of due process, and battery. (Doc. 1; Doc. 5; Doc. 31-1, ¶¶ 1–2, 5; Doc. 44-1, ¶¶ 1–2, 5).

Plaintiff was hired by Board on September 14, 2018. (Doc. 31-1, ¶ 3; Doc. 44-1, ¶ 3). Plaintiff's job title was "Confidential Assistant to the Superintendent," Sam. (*Id.*). Sam was Plaintiff's supervisor. (Doc. 31-1, ¶ 6;

1

Doc. 44-1, ¶ 6).

During her employment, Plaintiff texted Sam multiple times in the evening hours regarding her personal life. (Doc. 31-1, ¶ 8; Doc. 44-1, ¶ 8). Additionally, Plaintiff contacted Sam regarding an incident where Plaintiff was accused of calling another employee a "bitch." (Doc. 31-1, ¶ 7; Doc. 44-1, ¶ 7). Sam instructed Plaintiff to contact Human Resources. (*Id.*). Plaintiff complied. (*Id.*).

On February 4, 2019, Plaintiff requested to attend an out-of-state training in Chicago, which cost $3,300.00. (Doc. 31-1, ¶ 9; Doc. 44-1, ¶ 9). Board denied approval of this training. (*Id.*). On February 5, 2019, Plaintiff requested to attend a Photoshop course at LSU. (Doc. 31-1, ¶ 10; Doc. 44-1, ¶ 10). Board also denied approval of this training. (*Id.*).

On February 5, 2019, Plaintiff emailed Keisha Netterville, Executive Director of Human Resources, requesting a discussion regarding courses that she would like to attend. (Doc. 31-1, ¶ 11; Doc. 44-1, ¶ 11). Plaintiff did not mention sexual harassment in this email.[1] (*Id.*).

On February 7, 2019, Sam instructed Plaintiff to report to SSA Consultants on February 8, 2019, at 8:00 A.M. for a professional development and training session. (Doc. 31-1, ¶ 12; Doc. 44-1, ¶ 12). Sam instructed Plaintiff to be prompt and prepared to stay all day. (*Id.*). Plaintiff reported to SSA Consultants on February 8, 2019, but objected to part of the training session and left an hour after arriving. (Doc. 31-1, ¶ 13; Doc. 44-1, ¶ 13). After leaving the training session, Plaintiff did not return to work.

---

[1] The Court notes that Plaintiff seeks to strike Board's statement. The statement is deemed admitted, however, for failure to comply with the Local Rules. *See* Local Civil Rule 56.

(Doc. 31-1, ¶ 14; Doc. 44-1, ¶ 14). Plaintiff was suspended on February 11, 2019. (Doc. 31-1, ¶ 15; Doc. 44-1, ¶ 15).

On February 12, 2019, Sam notified Plaintiff that he was contemplating undertaking disciplinary action against Plaintiff for failing to complete mandated training.[2] (Doc. 31-1, ¶ 16; Doc. 44-1, ¶ 16). Sam also informed Plaintiff that she had the opportunity to respond. (*Id.*). Plaintiff emailed a response to Sam, Netterville, and the Board president providing her position on the training and requesting a "status" on her employment. (*Id.*). Plaintiff did not mention sexual harassment in her email. (*Id.*).

On March 14, 2019, Sam placed Plaintiff on leave without pay and recommended her termination. (Doc. 31-1, ¶ 17; Doc. 44-1, ¶ 17). The stated reason was insubordination for failure to attend a purported mandated professional development and training as directed by Sam. (*Id.*). Sam informed Plaintiff of this recommendation by letter. (*Id.*). The letter stated that Plaintiff could attend the April 2, 2019 Board meeting and elect to have a discussion regarding Sam's recommendation in either "open or executive session." (*Id.*).

On March 26, 2019, Plaintiff emailed Sam requesting that he reconsider his decision to place her on leave without pay. (Doc. 31-1, ¶ 18; Doc. 44-1, ¶ 18). If he could not or would not reconsider his recommendation, Plaintiff requested a closed session hearing. (*Id.*). Later that day, Sam replied to Plaintiff's email stating that he

---

[2] The Court notes that Plaintiff seeks to strike Board's statements contained in Paragraph 16 of Board's Statement of Uncontested Material Facts. (Doc. 31-1, ¶ 16; Doc. 44-1, ¶ 16). The statement is deemed admitted, however, for failure to comply with the Local Rules. *See* Local Civil Rule 56.

3

would inform the Board that Plaintiff wished to have the recommendation considered in private and invited Plaintiff to send any additional information for consideration. (Doc. 31-1, ¶ 19; Doc. 44-1, ¶ 19).

Plaintiff had a termination hearing during the April 2, 2019 Board meeting in executive session in accordance with her request. (Doc. 31-1, ¶ 20; Doc. 44-1, ¶ 20). Plaintiff spoke at the termination hearing. (Doc. 31-1, ¶ 21; Doc. 44-1, ¶ 21). Plaintiff did not mention any allegations of sexual harassment during her termination hearing.[3] (Doc. 31-1, ¶ 24; Doc. 44-1, ¶ 24). Plaintiff was discharged on April 2, 2019 following the hearing. (Doc. 31-1, ¶ 22; Doc. 44-1, ¶ 22). The stated reason for Plaintiff's discharge was failure to attend a purported mandated professional development and training session. (Doc. 31-1, ¶ 23; Doc. 44-1, ¶ 23).

## II.    LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

---

[3] The Court notes that Plaintiff seeks to strike Board's statement. The statement is deemed admitted, however, for failure to comply with the Local Rules. *See* Local Civil Rule 56.

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of [Defendant's] Motion, and therefore, the Court could grant [Defendant's] Motion for Summary Judgment on this basis alone.").

## III.  DISCUSSION

Defendants Board and Sam move for summary judgment, arguing that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. (Doc. 31; Doc. 35). Board argues that summary judgment is warranted regarding Counts I, II, and IV in Plaintiff's Amended Complaint—Plaintiff's claims against Board for sexual harassment, retaliatory discharge, and denial of due process. (Doc. 31; Doc. 5). Sam seeks summary judgment regarding Count III—Plaintiff's

claim for "batteries" against Sam. The Court will address each Motion in turn, beginning with Board. (Doc. 35; Doc. 5).

### a. Board's Motion for Summary Judgment (Doc. 31)

#### i. Count I—"Sexual Harassment"

First, Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Hooge v. Union Pac. R.R. Co.*, No. CV 18-1112-SDD-RLB, 2020 WL 3067219, at *7 (M.D. La. June 9, 2020) (citing 42 U.S.C. § 2000e–2(a)(1)). Sexual harassment is a form of sex discrimination. *Id.* The Supreme Court has recognized two types of sexual harassment claims: (1) "quid pro quo" claims, based on requests for sexual favors that result in adverse employment actions; and (2) hostile work environment claims, in which bothersome attentions or sexual remarks create a hostile work environment. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)). Each type of sexual harassment claim requires a distinct analysis. *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).

#### 1. Classification of Case as "Quid Pro Quo" or "Hostile Environment"

The Court must first determine whether this is a "quid pro quo" or "hostile environment" case. *Casiano*, 213 F.3d at 283. Plaintiff did not allege either classification in her Complaint. (Doc. 5). Plaintiff argues in her Opposition, however,

that Board is not entitled to the *Ellerth/Faragher* affirmative defense, implying that Plaintiff believes this is a quid pro quo case.[4] (Doc. 46).

To determine whether this case is a quid pro quo or hostile environment case, the Court must ascertain whether Plaintiff suffered a "tangible employment action." *Casiano*, 213 F.3d at 283 (citing *Ellerth*, 524 U.S. at 761–62). Tangible employment actions "require[ ] an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761–62. If Plaintiff has suffered a tangible employment action, her suit is classified as a quid pro quo case.[5] *Casiano*, 213 F.3d at 283. If Plaintiff has not suffered a tangible employment action, her suit is classified as a hostile environment case.[6] *Id.*

Here, Board terminated Plaintiff. (Doc. 31-1, ¶ 22; Doc. 44-1, ¶ 22). Termination is a tangible employment action. *Casiano*, 213 F.3d at 283; *see also*

---

[4] The *Ellerth/Faragher* affirmative defense provides that an employer may avoid vicarious liability for a supervisor's sexual harassment if the employer can prove the following: "[a]bsent a tangible employment action, (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000). "[T]his is the employer's only affirmative defense in a supervisor sexual harassment case post *Ellerth/Faragher*, and it is available only in a hostile environment (no tangible employment action) situation; never in a quid pro quo (tangible employment action) case." *Id.*

[5] If Plaintiff can establish a "quid pro quo" case by showing that the "tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment," her employer is "vicariously liable per se and is not entitled to assert the one and only affirmative defense permitted in such cases since *Ellerth* and *Faragher*." *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000).

[6] In a "hostile environment" case, the employer may assert the *Ellerth/Faragher* affirmative defense. *Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000).

*Ellerth*, 524 U.S. at 761–62 (tangible employment actions include "firing"). Accordingly, this is a quid pro quo case. *See Casiano*, 213 F.3d at 283.

## 2. Quid Pro Quo Analysis

In a quid pro quo case, the Court must determine whether the tangible employment action Plaintiff suffered resulted from her "acceptance or rejection of [her] supervisor's alleged sexual harassment." *Casiano*, 213 F.3d at 284 (citing *Ellerth*, 524 U.S. at 753–54). If Plaintiff cannot show such a nexus, her employer is not vicariously liable under Title VII for sexual harassment by a supervisor. *Casiano*, 213 F.3d at 284. If Plaintiff *can* demonstrate such a nexus, however, her employer is vicariously liable per se and is not entitled to assert the one and only affirmative defense permitted in such cases since *Ellerth* and *Faragher. Id.* at 283–84 (citing *Ellerth*, 524 U.S. at 753, 761, 762, 765) ("[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer."); *Faragher*, 524 U.S. at 804–05, 808). "In other words, proof that a tangible employment action did result from the employee's acceptance or rejection of sexual harassment by his supervisor makes the employer vicariously liable, *ipso facto*; no affirmative defense will be heard." *Casiano*, 213 F.3d at 284.

In the instant case, Plaintiff failed to allege that her termination was a result of her acceptance or rejection of Sam's alleged sexual harassment. (*See* Doc. 5). To survive summary judgment, Plaintiff must do *more* than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions

on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Not only did Plaintiff fail to allege a key material fact, Plaintiff also failed to point to record evidence establishing that her termination resulted from her acceptance or rejection of Sam's alleged sexual harassment. (*See* Doc. 46–Doc. 46-1). Plaintiff's omission is fatal to her sexual harassment claim against Board. *See Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) (a party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

Because Plaintiff failed to show that her termination resulted from her acceptance or rejection of Sam's alleged sexual harassment, Board is not vicariously liable under Title VII for Sam's alleged sexual harassment. *Casiano*, 213 F.3d at 284. Summary judgment is granted regarding Count I. Plaintiff's sexual harassment claim against Board is dismissed.

### ii.  Count II—"Retaliatory Discharge"

Second, Title VII makes its unlawful for any employer to retaliate against an employee for bringing a charge under Title VII. *Combs v. Exxon Mobile Corp.*, No. CIV.A. 04-151-C, 2007 WL 3353504, at *4 (M.D. La. Nov. 7, 2007) (citing 42 U.S.C. § 2000e-3(a)). Retaliation claims based on

circumstantial evidence are reviewed under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green. See Robinson v. Jackson State Univ.*, 714 F. App'x 354, 359 (5th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Under the *McDonnell Douglas* framework, Plaintiff must establish a *prima facie* case of retaliation. *Combs*, 2007 WL 3353504, at *4 (citing *Septimus v. Univ. of Hous.*, 399 F.3d 601, 607 (5th Cir. 2005)). To establish a *prima facie* case, Plaintiff must show the following: (1) Plaintiff "engaged in protected activity"; (2) Plaintiff "suffered from an adverse employment action"; and (3) "there was a causal connection between the activity and the adverse employment decision." *Robinson*, 714 F. App'x at 359.

If Plaintiff establishes a *prima facie* case, then a presumption of discrimination arises and the burden shifts to Board to articulate—but not prove—a legitimate nondiscriminatory reason for the adverse employment action. *Combs*, 2007 WL 3353504, at *4 (citing *Evans v. City of Hous.*, 246 F.3d 344, 350 (5th Cir. 2001)). If Board meets its burden of production, then the presumption of intentional discrimination is rebutted and the burden shifts back to Plaintiff to show that the reason proffered by Board is merely pretext for discrimination. *Combs*, 2007 WL 3353504, at *4 (citing *Evans*, 246 F.3d at 350).

### 1. *Prima Facie* Case

In the instant case, Board asserts that Plaintiff cannot establish her *prima facie* case. (Doc. 31-2, p. 1). Specifically, Board contends that Plaintiff cannot

10

establish that she engaged in a protected activity or that she was fired because she reported sexual harassment. (*Id.* at p. 17). Rather, Board argues that Plaintiff was fired for insubordination—a legitimate, nondiscriminatory reason for Plaintiff's termination. (*Id.*). Board also contends that Plaintiff cannot bear her burden of showing that Board's offered reason for termination is a pretext for discrimination. (*Id.* at p. 18).

To succeed with her retaliation claim, Plaintiff must first establish her *prima facie* case. *Robinson*, 714 F. App'x at 359.

### a. Protected Activity

To satisfy the first prong of her *prima facie* case, Plaintiff must establish that she engaged in a "protected activity." *See Robinson*, 714 F. App'x at 359. Under Title VII, an employee has engaged in protected activity if she has either: (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000) (citing 42 U.S.C. § 2000e–3(a)). An employee who files an internal complaint of discrimination engages in a protected activity. *Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013). "While opposition to discrimination need not be in formal written form, internal complaints must reference discrimination or other unlawful employment activity in order to be protected." *Willis v. Napolitano*, 986 F. Supp. 2d 738, 748 (M.D. La. 2013), *aff'd sub nom. Willis v. U.S.*, 576 F. App'x 340 (5th Cir. 2014).

Here, relying solely on her own Declaration, Plaintiff argues that she engaged in a protected activity by reporting Sam's alleged sexual harassment to Lillian Drake, a Board member. (Doc. 5, ¶ 19; Doc. 44, p. 14–15; Doc. 44-1, ¶ 7). Contrarily, Drake testified in her deposition that she believed Plaintiff felt harassed by Board's denial of Plaintiff's requests to attend certain trainings. (Doc. 32-3, p. 23:9-20). Drake denied knowledge of "any other source of harassment." (*Id.* at p. 23:17-20). In short, Plaintiff attests that she reported Sam's alleged sexual harassment to Drake, a protected activity; Drake denied knowledge of such a report.

Accordingly, there is a factual dispute regarding whether Plaintiff reported the alleged sexual harassment to Drake. Assuming Plaintiff did report the alleged sexual harassment to Drake, the Court is unable to determine from the record whether Plaintiff's verbal report contained sufficient references to discrimination or other unlawful employment activity to constitute an "internal complaint," and therefore, a protected activity. *See Willis*, 986 F. Supp. 2d at 748. Assuming *arguendo* that Plaintiff engaged in a protected activity, however, Plaintiff's *prima facie* case fails for other reasons.

### b. Adverse Employment Action

To satisfy the second prong of her *prima facie* case, Plaintiff must establish that she suffered an adverse employment action. *See Robinson v. Jackson State Univ.*, 714 F. App'x 354, 359 (5th Cir. 2017). Here, it is undisputed that Board terminated Plaintiff. (Doc. 31-1, ¶ 22; Doc. 44-1, ¶ 22). Termination is an adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("We have

12

historically held that, for all Title VII claims, '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'"). Plaintiff has satisfied the second prong of her *prima facie* case.

### c.  Causal Connection

To satisfy the third prong of her *prima facie* case, Plaintiff must establish that there was a causal connection between her alleged report of Sam's sexual harassment and her termination. *See Robinson*, 714 F. App'x at 359. For the reasons set forth below, Plaintiff cannot bear her burden of establishing causation.

The Supreme Court has held that Title VII retaliation claims must be proved according to traditional principles of but-for causation. *Willis v. Napolitano*, 986 F. Supp. 2d 738, 748 (M.D. La. 2013), *aff'd sub nom. Willis v. U.S.*, 576 F. App'x 340 (5th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358–360, 133 S. Ct. 2517, 2532–33, 186 L. Ed. 2d 503 (2013)). "In other words, a plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Willis*, 986 F. Supp. 2d at 748 (citing *Nassar*, 570 U.S. at 360). The Fifth Circuit has interpreted this but-for standard to apply to Plaintiff's burden of establishing a *prima facie* retaliation case. *Willis*, 986 F. Supp. 2d at 748 (citing *Finnie v. Lee Cty., Miss.*, 541 F. App'x 368, 371–72 (5th Cir. 2013) ("To meet the third prong [of a *prima facie* case], *Nassar* requires that Finnie provide sufficient evidence to allow a reasonable juror to conclude that her filing of an EEOC claim was the "but-for"

13

cause of her termination, and that, had she not filed the claim, she would have remained in her position at the Lee County Detention Center.").

Here, Plaintiff sets forth two theories to establish a causal connection between her alleged protected activity and termination: (1) temporal proximity; and (2) constructive knowledge. The Court will address each in turn.

First, citing cases that are nonbinding on the Court, Plaintiff argues that temporal proximity establishes causation. (Doc. 44, p. 15). Plaintiff contends that she reported Sam's conduct to Drake on February 5, 2019. (Doc. 5, ¶ 19). Plaintiff alleges that she was suspended on February 11, 2019 and discharged on April 2, 2019. (*Id.* at ¶¶ 28, 30). Plaintiff ignores, however, the remainder of the events that occurred during this timeframe:

- On February 4, 2019, Plaintiff requested to attend an out-of-state training, which the Board denied. (Doc. 31-1, ¶ 9; Doc. 44-1, ¶ 9).

- On February 5, 2019, Plaintiff requested to attend a Photoshop course at LSU, which the Board denied. (Doc. 31-1, ¶ 10; Doc. 44-1, ¶ 10).

- On February 5, 2019, Plaintiff emailed Netterville, Executive Director of Human Resources, requesting a discussion regarding courses that she would like to attend. (Doc. 31-1, ¶ 11; Doc. 44-1, ¶ 11). Plaintiff did not mention sexual harassment in this email. (*Id.*).

- On February 7, 2019, Sam instructed Plaintiff to report to SSA Consultants on February 8, 2019, at 8:00 A.M. for professional development and training. (Doc. 31-1, ¶ 12; Doc. 44-1, ¶ 12). Sam

14

instructed Plaintiff to be prompt and to be prepared to stay all day. (*Id.*).

- On February 8, 2019, Plaintiff reported to SSA Consultants, but objected to part of the training and left an hour after arriving. (Doc. 31-1, ¶ 13; Doc. 44-1, ¶ 13). After leaving the training, Plaintiff did not return to work. (Doc. 31-1, ¶ 14; Doc. 44-1, ¶ 14).

- On February 11, 2019, Plaintiff was suspended. (Doc. 31-1, ¶ 15; Doc. 44-1, ¶ 15).

- On February 12, 2019, Sam notified Plaintiff that he was contemplating undertaking disciplinary action against Plaintiff for failing to complete mandated training. (Doc. 31-1, ¶ 16; Doc. 44-1, ¶ 16). Sam also informed Plaintiff that she had the opportunity to respond. (*Id.*). Plaintiff emailed a response to Sam, Netterville, and the Board president providing her position on the training and requesting a "status" on her employment. (*Id.*). Plaintiff did not mention sexual harassment in her email. (*Id.*).

- On March 14, 2019, Sam placed Plaintiff on leave without pay and recommended her termination. (Doc. 31-1, ¶ 17; Doc. 44-1, ¶ 17). The stated reason was insubordination for failure to attend a purported mandated professional development and training session as directed by Sam. (*Id.*). Sam informed Plaintiff of this recommendation by letter. (*Id.*). The letter stated that Plaintiff could attend the April 2, 2019 Board meeting and elect to have a discussion regarding Sam's recommendation in either "open or executive session." (*Id.*).

- On March 26, 2019, Plaintiff emailed Sam requesting that he reconsider his decision to place her on leave without pay. (Doc. 31-1, ¶ 18; Doc. 44-1, ¶ 18). If he could not or would not reconsider his recommendation, Plaintiff requested a closed session hearing. (*Id.*). Later that day, Sam replied to Plaintiff's email stating that he would inform the Board that Plaintiff wished to have the recommendation considered in private and invited Plaintiff to send any additional information for consideration. (Doc. 31-1, ¶ 19; Doc. 44-1, ¶ 19).

- On April 2, 2019, Plaintiff had a termination hearing during the Board meeting in executive session in accordance with her request. (Doc. 31-1, ¶ 20; Doc. 44-1, ¶ 20). Plaintiff spoke at the termination hearing. (Doc. 31-1, ¶ 21; Doc. 44-1, ¶ 21). Plaintiff did not mention any allegations of sexual harassment during her termination hearing. (Doc. 31-1, ¶ 24; Doc. 44-1, ¶ 24).

- Also on April 2, 2019, following the hearing, Plaintiff was discharged. (Doc. 31-1, ¶ 22; Doc. 44-1, ¶ 22). The stated reason for Plaintiff's discharge was failure to attend a purported mandated professional development and training session. (Doc. 31-1, ¶ 23; Doc. 44-1, ¶ 23).

Viewing the facts in context with the other events that occurred during the timeframe at issue, Plaintiff has failed to establish that "but for" her alleged report to Drake, she would not have been terminated. The Fifth Circuit has held that "temporal proximity between protected activity and alleged retaliation is *sometimes*

enough to establish causation at the prima facie stage." *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 420 (5th Cir. 2016) (emphasis added) (citing *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015)). The Fifth Circuit has also held, however, that the "burden has now shifted to a heightened standard of 'but-for' causation, for which temporal proximity, without more, will not suffice." *Hernandez*, 673 F. App'x at 420 (emphasis added) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). In the present case, temporal proximity alone is insufficient to establish "but for" causation.

Second, Plaintiff contends that Sam had constructive knowledge of Plaintiff's alleged complaint to Drake because of his varied behavior and close relationship with Drake. (Doc. 44, p. 9–12).

The causation prong of any retaliation claim requires proof that the "employer knew about the employee's protected activity." *Robinson*, 714 F. App'x at 360 (citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003)). The rationale is a simple one: "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Robinson*, 714 F. App'x at 360 (citing *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)).

The Fifth Circuit has declared that "[a] decisionmaker's awareness may be established by circumstantial evidence." *Robinson*, 714 F. App'x at 360 (citing *E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017)). "But carrying that

burden requires more evidence than mere curious timing coupled with speculative theories, and isolated evidence of generalized discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity creates only a speculative inference regarding the decisionmaker's awareness." *Robinson*, 714 F. App'x at 360 (citing *EmCare, Inc.*, 857 F.3d at 683) (internal quotations omitted).

The Fifth Circuit has also held that "general corporate knowledge" is insufficient, but rather, "[the Fifth Circuit has] consistently required proof of 'actual' decisionmaker knowledge." *Robinson*, 714 F. App'x at 360 (citing *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001)). "Whatever the law may be elsewhere, mere 'constructive notice' does not suffice in this circuit." *Robinson*, 714 F. App'x at 360 (citing *Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1300 n.6 (5th Cir. 1981)).

Here, Plaintiff argues the following: (1) Sam lingered after a Board meeting while Plaintiff was talking with Drake instead of leaving directly after a meeting; (2) Sam denied three training requests by Plaintiff and ordered Plaintiff to attend training; and (3) Sam switched from praising her work at two Board meetings and occasionally complimenting her to ordering a surprise personality test. (Doc. 44, p. 9–12). Plaintiff also urges the Court to infer Sam's knowledge of Plaintiff's alleged protected activity because of his "apparent close relationship" with Drake. (*Id.* at p. 12).

Plaintiff's arguments, without more, are insufficient to establish "but for"

causation, but rather, amount to speculative inferences of decisionmaker knowledge. Courts have repeatedly rejected speculative inferences of decisionmaker knowledge. *See Robinson*, 714 F. App'x at 360 (citing *Turner v. Jacobs Eng'g Grp., Inc.*, 470 F. App'x. 250, 253 (5th Cir. 2012) (per curiam) (rejecting inference of decisionmaker knowledge from the decisionmaker's single negative comment and general conversations between the decisionmaker and other knowledgeable employees); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168–69 (5th Cir. 1999) (rejecting inference of decisionmaker knowledge from a supervisor's single curious comment when the employee never told anyone at his place of employment about his protected activity and two years elapsed before his termination); *compare EmCare*, 857 F.3d at 684 (affirming decisionmaker-knowledge finding when (1) a supervisor criticized the employee following each complaint; (2) the supervisor worked in the same division as the decisionmaker; (3) the supervisor and decisionmaker discussed the employee's performance; and (4) the decisionmaker fired the three complaining employees on the same day); *Ellerbrook v. City of Lubbock*, 465 F. App'x. 324, 332–33 (5th Cir. 2012) (per curiam) (affirming decisionmaker-knowledge finding when a supervisor with knowledge of the protected activity discussed with the decisionmaker how to interview the plaintiff).

Because Plaintiff has failed to establish a causal connection between her alleged protected activity—reporting sexual harassment to Drake—and her termination, Plaintiff has failed to establish a *prima facie* case. Accordingly, summary judgment is granted in Board's favor regarding Count II, Plaintiff's

retaliatory discharge claim.

### iii.  Count IV—"Denial of Due Process"

Finally, the Court turns to Plaintiff's "denial of due process" claim.

### 1.  Procedural Due Process

In her Opposition to Board's Motion, Plaintiff "concedes" her procedural due process claim.[7] (Doc. 44, p. 5). Accordingly, summary judgment will be granted in Board's favor regarding Plaintiff's procedural due process claim. (*Id.*).

### 2.  Substantive Due Process

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that [s]he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630–31 (5th Cir. 2011) (citing *Moulton v. Cty. of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).

Plaintiff must first establish a property interest in her employment. *See Lewis*, 665 F.3d at 630–31. To determine if an individual has a property interest in her employment, courts look to Louisiana state and local law. *Dunn v. Strain*, No. CIV.A. 04-2354, 2005 WL 3543778, at *4 (E.D. La. Oct. 19, 2005) (citing *Cabrol v. Town of Youngsville*, 106 F.3d 101, 106 (5th Cir. 1997). Here, Plaintiff was employed in Louisiana. (Doc. 46, p. 8).

Louisiana recognizes the doctrine of "employment at will" and, absent a

---

[7] The Court interprets Plaintiff's statement as an abandonment of her procedural due process claim.

contractual relationship, the reasons for termination need not be accurate, fair or reasonable. *Huang v. La. State Bd. of Tr. for the State Coll. and Univ.*, 1999-2805 (La. App. 1st Cir. 12/22/00), 781 So. 2d 1, 11. "Absent a contractual agreement for employment for a specified term or a legislative or regulatory restraint on a public entity's termination authority, Louisiana law does not establish a right to continued employment." *Dunn*, 2005 WL 3543778, at *4 (citing *Cabrol*, 106 F.3d at 106). Here, Plaintiff has failed to establish the existence of a written contractual agreement or legislation vesting her with a property interest in her continued employment. *See Dunn*, 2005 WL 3543778, at *4.

Instead, Plaintiff argues that a property interest arose from Sam's offer to Plaintiff for an "opportunity for a hearing . . ." and Plaintiff's acceptance of same. (Doc. 44, p. 22–23). Because the Board held a hearing prior to terminating Plaintiff, Plaintiff contends that the Board implicitly recognized Plaintiff's property interest in her employment and created a "contract for a due process hearing" with Plaintiff. (*Id.*). Plaintiff notes: "No on point case could be found via WestLaw Nevertheless, this contention [sic] seems sound." (*Id.* at p. 23).

Contrarily, Board asserts that no property interest existed between Plaintiff and Board for the following reasons: (1) Louisiana is an at-will employment state and does not establish a right to continued employment; (2) Plaintiff was subject to dismissal by Board upon the written recommendation of Sam, as stated in the Employee Handbook; and (3) there was no understanding between Plaintiff and Board which created a property interest. (Doc. 31-2, p. 18). Specifically, Board argues

21

it did not have a "meeting of the minds" with Plaintiff such that that Plaintiff acquired a property interest; rather, Plaintiff's argument relies on nonbinding authority. (Doc. 46, p. 8). The Court agrees.

Plaintiff has failed to point to a written contract, law, or case that supports her argument. Additionally, Plaintiff has failed to establish a particularized mutual understanding between Plaintiff and Board such as to create an implied contract for a property interest in employment. *See Muncy v. City of Dallas, Tex.,* 335 F.3d 394, 398 (5th Cir. 2003). Again, a party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *See Broussard v. Oryx Energy Co.,* 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000).

Because Plaintiff has failed to establish a property interest in her employment, the Court need not determine whether Board's termination of Plaintiff's interest was arbitrary or capricious. *See Lewis v. Univ. of Tex. Med. Branch at Galveston,* 665 F.3d 625, 630–31 (5th Cir. 2011). Summary judgment is granted in Board's favor regarding Count IV. Plaintiff's substantive due process claim is dismissed. (Doc. 31).

### b. Sam's Motion for Summary Judgment (Doc. 35)

#### i. Count III—"Batteries by Sam"

Because the Court has dismissed Plaintiff's claims against Board, the only remaining claims are Plaintiff's state law tort claims against Sam. (*See* Doc. 5, "Count 3–Batteries by Sam"). The Court, however, declines to exercise supplemental jurisdiction over Plaintiff's state law tort claims against Sam because it has dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C.A. § 1367(c)(3) ("The

22

district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, Plaintiff's claims against Sam are dismissed without prejudice. Sam's Motion for Summary Judgment is denied as moot. (Doc. 35).

## IV.   CONCLUSION

**IT IS ORDERED** that Defendant East Feliciana School Board's **Motion for Summary Judgment (Doc. 31) is GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Board are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Sam are **DISMISSED WITHOUT PREJUDICE.** The Court has dismissed all claims over which it had original jurisdiction and declines supplemental jurisdiction over Plaintiff's state law tort claims against Sam.

**IT IS FURTHER ORDERED** that Defendant Carlos Sam's **Motion for Summary Judgment (Doc. 35) is DENIED** as **MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's **Motion For Leave File Sur-Reply To Board's Reply (Doc. 48) is DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's **Motion For Leave File Sur-Reply To Sam's Reply (Doc. 49)** is **DENIED.**

Baton Rouge, Louisiana, this 28th day of July, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**